IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| DAVID DIAZ,<br>Plaintiff,<br><br>v.<br><br>MAXIMUS SERVICES, LLC, Et Al.,<br>Defendant. | §<br>§<br>§   EP-22-CV-463-DB<br>§<br>§<br>§<br>§ |

## <u>MEMORANDUM OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

On this day, the Court considered Defendant Maximus Service, LLC and Maximus Federal Services, Inc.'s ("Maximus") "Motion for Summary Judgment," filed on September 15, 2023. Motion ("Mot.") ECF No. 20.[1] Plaintiff David Diaz ("Mr. Diaz") brings claims of discrimination, failure to accommodate, and retaliation under Chapter 21 of the Texas Labor Code, also known as the Texas Commission on Human Rights Act ("TCHRA"). Plaintiff's Original Petition ("Pet.") 2—7, Defendant's Notice of Removal ("Notice") Ex. A, ECF No. 1. The Court finds that Mr. Diaz has not raised a genuine issue of material fact as to these claims and grants Maximus's Motion for Summary Judgment.

### BACKGROUND

Mr. Diaz self-identifies as Hispanic and has a learning disability. Pet. 1, Notice Ex. A, ECF No. 1. Maximus hired Mr. Diaz as an at-will, limited-service employee in January 2020. Mot. 2, ECF No. 20; *see also* Diaz Deposition ("Diaz Dep.") 61–62, 64–66, 70,[2] Mot. Ex. A, ECF No. 20; *see also* Reyes Declaration ("Reyes Decl."), Mot., Ex. E ¶ 4, ECF No. 20. In July 2020, Mr. Diaz began working as a Workforce Management ("WFM") Analyst on Maximus's Florida

---

[1] "ECF No." refers to the Electronic Case Filing ("ECF") number for documents docketed in this matter. When a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers, unless otherwise noted.
[2] For the remainder of this opinion, citations to individual depositions will adhere to the page numbers on the document itself rather than to the page numbers on CM/ECF.

Contact Tracing Project. Mot. 3, ECF No. 20. As a WFM analyst, Mr. Diaz's duties included managing the schedules of customer service representatives who worked at the call center for the Florida Contact Tracing project. Mot. 3, ECF No. 20.

Complaints about Mr. Diaz's performance began only a few months after he began working on the Florida Contact Tracing Project. *See* Mot. 4—7, ECF No. 20. In September 2020, Mr. Diaz erroneously entered mandatory time off for the customer service representatives, which interrupted work for 58 employees. *Id.* at 4. After this incident, Mr. Diaz received verbal counseling from the WFM Manager, Susan Reyes ("Ms. Reyes"). *Id.*; *see also* Reyes Decl., Mot. Ex. E ¶ 7, ECF No. 20. In early November, Mr. Diaz arrived late to work two times—one time he was two hours late and another time 30 minutes late. Mot. 4, ECF No. 20. On neither occasion did he inform his supervisor, Lakeisha Jesters ("Ms. Jesters"), that he would be late. *Id.* On November 9, Ms. Jesters gave him a verbal warning and sent him a follow-up email. *Id.*; *see also* Diaz Dep. 122:10-11, Mot. Ex. A, ECF No. 20. Even so, Mr. Diaz's supervisors report that Mr. Diaz logged in late on several more occasions that month, and on November 25, he did not log into work at all, blaming technical difficulties. Mot. 4—5, ECF No. 20; *see also* Reyes Decl., Mot. Ex. E ¶ 9, ECF No. 20. In addition to attendance concerns, Mr. Diaz's supervisors expressed concerns about his communication, noting that his emails were "filled with spelling and grammar errors" and were "often confusing and difficult to understand, and the tone was often harsh." Mot. 5, ECF No. 20; *see also* Reyes Decl., Mot. Ex. E ¶ 10, ECF No. 20.

On November 30, Ms. Jesters and another project supervisor, Pamela Willingham ("Ms. Willingham"), met with Mr. Diaz to discuss concerns with his attendance and his email correspondence. Mot. 5, ECF No. 20. In response to his supervisors' feedback on his emails, Mr.

2

Diaz informed his supervisors that he has a learning disability.[3] Mot. 5, ECF No. 20; *see also* Pet. 3, Notice Ex. A, ECF No. 1. In response, Ms. Willingham claims that she shared with him that she has a brother with a learning disability and offered strategies to help him improve his spelling and grammar. Mot. 5—6, ECF No. 20; Willingham Deposition ("Willingham Dep.") 32:5-24, Mot. Ex. C, ECF No. 20. But Mr. Diaz had a different interpretation of this exchange, claiming that Ms. Willingham "made fun of and belittled him," Pet. 3, Notice Ex. A, ECF No. 1, and "discriminated against [him]" when she compared him to her brother. Response in Opposition to Defendant's Motion for Summary Judgment ("Resp.") 1, ECF No. 21. The next day, Ms. Willingham sent an email to Mr. Diaz, recapping the meeting and explaining that the email served as a written warning. Mot. 6, ECF No. 20.

On December 1, Ms. Reyes announced new supervisor assignments, and Mr. Diaz was transferred from Ms. Jesters to Ms. Willingham for supervision. Mot. 6, ECF No. 20. On December 2, Mr. Diaz emailed Ms. Reyes, objecting to the transfer, claiming Ms. Willingham "ridiculed and humiliated him." Diaz Email, Resp. Ex. 5, ECF No. 21. On December 3, Mr. Diaz met with two representatives from Maximus's human resources department. Pet. 4, Notice Ex. A, ECF No. 1; *see also* Mot. 6, ECF No. 20.

Mr. Diaz missed work again on December 9 and 10. Mot. 7, ECF No. 20; *see also* Reyes Decl., Mot. Ex. E ¶ 15, ECF No. 20.

Later that month, Maximus reduced Mr. Diaz's project from 1100 to 315 customer service representatives. Mot. 7, ECF No. 20. In coordination with this staff reduction, WFM

---

3 Ms. Willingham claims that, prior to this conversation, she had no knowledge of Mr. Diaz's learning disability. Mot 5, ECF No. 20. Mr. Diaz claims, however, that he had already told Ms. Reyes and Ms. Jester about his learning disability. Diaz Dep. 97, 119, Mot. Ex. A, ECF No. 20.

Manager Reyes reduced the number of WFMs from eight to five, "with regular employees kept first over limited service or temporary employees." Reyes Decl., Mot. Ex. E ¶ 17, ECF No. 20. Ms. Reyes decided not to keep Mr. Diaz on the project (nor transfer him to another project) because of "the ongoing concerns with [his] attendance (reliability) and performance." *Id.* On December 28, Ms. Reyes notified Mr. Diaz that his employment was terminated based on the staff reduction. *Id.* at ¶ 18; *see also* Pet. 3, Notice Ex. A, ECF No. 1.

On May 27, 2021, Mr. Diaz filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Mot. 7, ECF No. 20. The EEOC dismissed the charge. *Id.* at 8. Mr. Diaz filed a claim in the 120th Judicial District Court of El Paso County on November 1, 2022. Notice 1, ECF No. 1. Maximus removed the action to federal court on December 15, 2022, *see* Notice 1, ECF No. 1, and moved for summary judgment on September 15, 2023. Mot. 2, ECF No. 20.

## LEGAL STANDARD

Summary judgment is appropriate when, "view[ing] facts in the light most favorable to the non-movant and draw[ing] all reasonable inferences in [his] favor," *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997), the Court finds that "there is no genuine[4] issue as to any material fact[5] and the moving party is entitled to judgment as a matter of law." *Coleman*, 113 F.3d at 533. In ruling on a motion for summary judgment, courts "refrain

---

[4] "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam).

from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (internal citations omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the moving party has demonstrated the absence of a material fact issue, the non-moving party must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (internal quotation omitted). "This burden will not be satisfied by . . . conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Id.*

## ANALYSIS

### I. Disparate Treatment

Mr. Diaz claims that Maximus discriminated against him on the basis of (1) disability and (2) race/national origin in violation of the TCHRA.[6] Pet. 4–6, Notice Ex. A, ECF No. 1. To prevail on these claims, Mr. Diaz must show that Maximus terminated his employment because of his disability and/or race and national origin. *See* Tex. Lab. Code § 21.051(1). Where, as here, plaintiff lacks "direct evidence of discrimination,"[7] courts apply the three-step burden-shifting

---

6 When interpreting Chapter 21 of the Texas Labor Code, also known as the Texas Commission on Human Rights Act ("TCHRA"), "Texas courts look to analogous federal statutes and the cases interpreting them to guide [them]." *Monsivais v. Abritron Inc.*, 44 F. Supp.3d 702, 707 (S.D. Tex. Sept. 5, 2014) (citation omitted); *see also Magallanes v. Penske Logistics, LLC*, 570 F. Supp. 2d 907, 913 n.6 (W.D. Tex. Jul. 31, 2008) (applying federal caselaw to TCHRA discrimination and retaliation claims because "the law governing claims under the [TCHRA] and Title VII [of the Civil Rights Act] is identical").

7 "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (*i.e.* unlawful discrimination) without any inferences or presumptions." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir. 1996).

formula articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Watkins v. Tregre*, 997 F.3d 275, 281 (5th Cir. 2021) (applying the *McDonnell Douglas* framework where plaintiff lacked direct evidence of discrimination). At the first step of this formula, plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Once plaintiff has established his prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its employment action. *Id.* Once this is established, the burden shifts to plaintiff to show that this reasoning is pretextual. *Id.* at 804.

### a. Mr. Diaz's Prima Facie Case Fails as to (1) Disability Discrimination and (2) Race/National Origin Discrimination.

> i. *Mr. Diaz's Disability Claim Fails because He Has not Shown He Has a Qualifying Disability Under the TCHRA.*

Mr. Diaz alleges that Maximus fired him on the basis of his disability, in violation of the TCHRA. Pet. 5, Notice Ex. A, ECF No. 1. Because Mr. Diaz does not provide direct evidence of this alleged discrimination, the Court applies the *McDonnell Douglas* formula. *See Watkins*, 997 F.3d at 281. To establish his prima facie case, Mr. Diaz must show that (1) he has a disability; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability. *Moss v. Harris Cnty. Constable Precinct One*, 851 F. 3d 413, 417 (5th Cir. 2017).[8] To establish his prima facie case, Mr. Diaz "need only make a very minimal showing." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (internal citations omitted).

To begin with, Mr. Diaz must show that he has a disability under the TCHRA, which defines disability as "a mental or physical impairment that substantially limits at least one

---

[8] *See supra* note 5 (When interpreting the TCHRA, "Texas courts look to analogous federal statutes and the cases interpreting them to guide [them]." *Monsivais*, 44 F. Supp. 3d at 707.

major life activity." Tex. Lab. Code § 21.002(6). Such major life activity may include "learning, reading, concentrating, thinking, communicating, and working." Tex. Lab. Code § 21.002(11-a).

Mr. Diaz claims that he is disabled because he has a "learning disability" that impairs his "brain function, and spelling, learning, reading, concentrating, thinking, writing, and interacting with others." Pet. 3, 5, Notice Ex. A, ECF No. 1. To support this contention, Mr. Diaz says that he had educational accommodations in high school and university for his learning disability. Resp. 8, ECF No. 21.

Maximus disagrees, emphasizing that Mr. Diaz

"graduated from high school and completed about three semesters of college with around a 4.0 GPA, he has worked in several jobs since high school, he attended a call center school and obtained a certification as a workforce analyst, he has worked in several jobs as a customer service representative and workforce analyst, including management positions, he has trained thousands of phone agents, he is proficient in various call center systems and computer languages, and he has more than seven years of experience in call center management positions." Mot. 11, ECF No. 20 (citations to the record omitted).

For these reasons, Maximus argues that that Mr. Diaz "does not appear to have any substantially limiting impairment" and thus has not shown that he has a disability under the statute. *Id.*

Although the prima facie case requires only a "minimal showing," the Court finds that Mr. Diaz has not met his burden to show that he has a disability under the TCHRA. *Nichols*, 81 F.3d at 41. Because Mr. Diaz completed high school, attended college (where he received "As and Bs"), and has held several jobs since then, there is no sign that his learning disability has substantially impaired any major life activities. *See* Diaz Dep. 19—20, 25—28, Mot. Ex. A, ECF No. 20. Moreover, Mr. Diaz does not refute this inference with evidence of how his learning disability substantially impacts a major life activity. Instead, the sole evidence Mr. Diaz provides

7

is that he received educational accommodations in high school and college. Resp. 8, ECF No. 21. But these accommodations, on their own, are insufficient to show he had a qualifying disability under the TCHRA. *See Glueck v. Nat'l Conf. of Bar Exam'rs*, 2018 WL 3977891, at *6 (W.D. Tex. Aug. 20, 2018) ("The fact that Plaintiff recently received some accommodations in school, without more, does not rise to the level of showing he was substantially limited as defined by the ADA.").

The Court finds that Mr. Diaz has not met his burden to show that he has a disability under the THRCA, so his disability discrimination claim fails at this first step.

> ii.  *Mr. Diaz's Race and National Origin Claim Fails Because He Has Not Identified Similarly Situated Employees Outside of His Protected Group that Were Treated More Favorably.*

Next, Mr. Diaz claims that Maximus discriminated against him on the basis of his race and national origin. Pet. 6, Notice Ex. A, ECF No. 1. To make a prima facie case of discrimination, Mr. Diaz must show that (1) he is a member of a protected group; (2) he is qualified for his position; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside his protected group or a similarly situated employee outside of his protected group was treated more favorably. *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 825 (5th Cir. 2022).

Neither party disputes that Mr. Diaz is a member of a protected class, that he was qualified for his position at Maximus, or that he suffered an adverse employment action. Pet. 6—7, Notice Ex. A, ECF No. 1; *see* Mot., ECF No. 20. Maximus claims, however, that Mr. Diaz has not shown that he was treated less favorably than a comparator – a similarly situated employee outside of his protected group. Mot. 15–16, ECF No. 20. The Court agrees.

First, Mr. Diaz has not shown that he was replaced by someone outside of his

protected group. Mr. Diaz lists three co-workers who violated Maximus's attendance policies as comparators: LaSheena Foster, Steven Beren, and Casie E. Smith. Resp. 17, ECF No. 21. But Mr. Diaz has not met his burden because he has not shown that the comparators were *outside of his protected group*. *See Owens*, 33 F.4th at 825; *see also Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259–262 (5th Cir. 2009) (Black plaintiff compared his treatment to the way two white co-workers were treated). Because Mr. Diaz has not provided the race or nationality of the comparators, he has not shown that they are outside his protected group, and therefore his prima facie claim fails.

Further, even if he did show that these comparators were outside of his protected group, Mr. Diaz has not shown that they are "similarly situated" to him because he has not shown that they have "comparable violation histories." *West v. City of Houston, Texas,* 960 F.3d 736, 740 (5th Cir. 2020) (internal citation omitted). First, Mr. Diaz has not shown that the comparators exhibit a similar, habitual pattern of absences or tardiness. In describing Mr. Diaz's performance, Maximus details a habitual pattern of logging in late (or missing entire days of work) without informing his supervisors. *See* Mot. 4—7, ECF No. 20. Although Mr. Diaz has shown that his co-workers—Foster, Beren, and Smith—were tardy or absent on at least *one occasion*, *see* Resp. 11 ex. 9, ECF No 21, he has not shown that any of these co-workers had logged in late or not logged in at all on *several occasions*. Thus, he has not shown that they have comparable violation histories.

Second, Mr. Diaz's supervisors' decision to terminate him was not just motivated by attendance concerns but also motivated by performance concerns, such as his unprofessional emails. Mot. 4—7, ECF No. 20. But Mr. Diaz has not shown that his

supervisors had similar performance concerns about any of the three comparators.

Because Mr. Diaz has not shown that the comparator employees were (1) outside his protected group or (2) had the same violation histories, his prima facie case for race/nationality-based discrimination fails.

### b. Even if the Court Found that Mr. Diaz Established His Prima Facie Case, His Claims Still Fail because Maximus Has Provided Legitimate, Nondiscriminatory Reasons for Firing Him.

Even if the Court did find that Mr. Diaz had established his prima facie case for disability and/or race and national origin discrimination, Maximus would rebut his claim at the second step of the *McDonnell Douglas* formula because it has provided "legitimate, nondiscriminatory reason[s]" for firing him. 411 U.S. at 802. Maximus fired Mr. Diaz because "there was a reduction in staff," and Mr. Diaz's supervisors decided to let him go because of his "attendance and performance issues." Mot. 12, ECF No. 20. The attendance issues include several instances in November and December 2020 that he logged in late or did not log in at all without advising his supervisors. Mot. 4—7, ECF No. 20. The performance issues include the instance when he erroneously entered mandatory time off in September 2020 as well as his supervisor's ongoing concerns over his email communications. *Id.* Because these are legitimate, nondiscriminatory reasons for terminating Mr. Diaz, the Court finds that, were he to establish his prima facie case, Mr. Diaz's discrimination claims would fail at the second step of the *McDonnell Douglas* formula.

## II. Failure to Accommodate Claim

Next, Mr. Diaz claims that Maximus failed to accommodate his disability, in violation of the TCHRA. Pet. 5, Notice Ex. A, ECF No. 1. To prevail on this claim, Mr. Diaz

must show that (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations. *Feist v. Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013) (internal citation omitted). To prevail under this statute, "it is incumbent upon the . . . plaintiff to assert not only a disability, but also any *limitation* resulting therefrom." *Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 164 (5th Cir. 1996) (emphasis added).

Mr. Diaz's claim fails at the first step because he has not shown that he is a "qualified individual with a disability" under the TCHRA. *See supra* Section I(a)(i). That said, even if the Court determined that he did have a disability under the statute, he has not shown he has any "consequential limitations" that Maximus knew about and failed to accommodate. *Feist*, 730 F.3d at 452.

The first accommodation Mr. Diaz requested was "time and understanding" from his supervisors, in regard to his learning disability. Resp. 13, ECF No. 21. Other than saying that he made this request "when he was on the Florida contact tracing project," Mr. Diaz does not explain to whom he made the request or at what time. Resp. 13, ECF No. 21; *see* Diaz Dep. 166:3-6[9], Mot. Ex. A, ECF No. 20. Mr. Diaz claims that his supervisors "did not follow up regarding the accommodation." Resp. 14, ECF No. 21. But without more specific information on (1) consequential limitations he faced; (2) how and when he requested accommodations; and (3) how Maximus failed to accommodate his limitations, Court finds that Mr. Diaz has not met his burden.

The second accommodation Mr. Diaz requested was to be reassigned to a new

---

9 Ms. Willingham denies that Mr. Diaz requested any kind of accommodation in her November 30 meeting with him. Willingham Dep. 31:24-25 – 32:1-2, Ex. C, ECF No. 20.

11

supervisor.[10] Mot. 14, ECF No. 20. Yet he does not explain how this request was connected in any way to a disability-related limitation. Mot. 14, ECF No. 20. Although Mr. Diaz expressed that he felt discriminated against during his November 30 meeting with Ms. Willingham, Pet. 3, Notice Ex. A, ECF No. 1, he has not shown that he experienced a consequential limitation (in connection with his disability), as a result of working under Ms. Willingham's supervision. Thus, Mr. Diaz fails to meet his burden for this accommodation as well.

### III. Retaliation Claim

Finally, Mr. Diaz claims that Maximus retaliated against him, in violation of the TCHRA. Pet. 6–7, Notice Ex. A, ECF No. 1. The TCHRA prohibits employers from retaliating or discriminating against employees who engage in one or more of the following protected activities: (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing. Tex. Lab. Code § 21.055.

To establish a prima facie case of retaliation, plaintiff must show "(1) that he is engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action." *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 525 (5th Cir. 2021). Once plaintiff establishes their prima facie case, the burden shifts to the employer "to articulate a legitimate, nonretaliatory reason for its adverse actions." *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 (5th Cir. 1995). Once this has been

---

10 The ADA enumerates a list of reasonable accommodations but transfer to a new supervisor is not included in this list. *See* 42 USC § 1211(9)(B). In its "Enforcement Guidance," the EEOC explains that "an employer does not need to provide a new supervisor as a reasonable accommodation." U.S. Equal Emp. Opportunity Comm'n, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act (Oct. 17, 2002), https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada#N_99_.

established, plaintiff must show that the employer's reasoning is pretextual and "but for" the protected activity, they would not have suffered the adverse employment action. *Id.*

Mr. Diaz claims that he engaged in protected activity by "opposing discrimination on November 30, 2020, again on December 2, 2020, and again on December 3, 2020." Resp. 18, ECF No. 21. Here, Mr. Diaz refers to his November 30 meeting with his supervisors, his December 2 email to WFM manager Reyes, and his meeting with HR the following day. Pet. 3-4, Notice Ex. A, ECF No. 1; Mot. 5–7, ECF No. 20. But Mr. Diaz has not shown that he raised discrimination concerns in any of these interactions.[11] *See* Diaz Email 21–22, Resp. Ex. 5, ECF No. 21; *see also* Diaz Dep. 159, 177–178, Mot. Ex. A, ECF No. 20. Therefore, Mr. Diaz cannot show that he engaged in a protected activity, "opposing discrimination," and his prima facie case fails.

Even so, if the Court found that Mr. Diaz established his prima facie case, his retaliation claim would still fail at the second step because Maximus articulated a set of legitimate, nonretaliatory reasons for firing him. *See supra* Section I(b).

## CONCLUSION

Mr. Diaz's allegations do not rise above the level of "conclusory allegations" and "unsubstantiated assertions," *McCarty*, 864 F.3d at 357, and thus he has not shown that there is a

---

[11] While Mr. Diaz did mention his learning disability in his November 30 conversation with Ms. Willingham, in his December 2 follow-up email, he does not allege that Ms. Willingham discriminated against him on the basis of his disability. Diaz Email 21-22, Resp. Ex. 5, ECF No. 21. Instead, he says that she made him feel "ridiculed and humiliated" because of his "horrible spelling skills." *Id.* at 22. Although he attributes his "horrible spelling skills" to his learning disability, the fact that his supervisors provided feedback on his spelling does not ipso facto mean that they discriminated against him on the basis of that learning disability. Moreover, Mr. Diaz's supervisors were not aware of his learning disability until the meeting in question. *See* Mot. 5, ECF No. 20, which abates any discriminatory intent of the meeting. However, by focusing on his supervisor's conduct, Mr. Diaz misses the mark; the inquiry for a retaliation claim is not whether or not his supervisors discriminated against him but instead whether he opposed discrimination, thus engaging in a protected activity. *See Cnty. of El Paso v. Flores*, 677 S.W.3d 31, 51 (Tex.App.-El Paso 2023) ("Unlike a discrimination claim, a retaliation claim focuses on the employer's response to an employee's protected activity, ... rather on the validity of the underlying discrimination complaint") (internal citations omitted).

genuine issue of material fact as to whether Maximus (1) discriminated against him, (2) failed to accommodate him, or (3) retaliated against him. Hence the Court grants Defendant Maximus's motion for summary judgment.

Accordingly, **IT IS HEREBY ORDERED** that Defendants Maximus Services, LLC and Maximus Federal Services, Inc.'s Motion for Summary Judgment," ECF No. 20, is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff David Diaz's claims against Defendants Maximus Services, LLC and Maximus Federal Services, Inc. are **DISMISSED WITH PREJUDICE.**

SIGNED this 9th day of **July 2024.**

_____
T**HE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**